

ENTERED
10/10/2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| DUNG ANH PHAN § | CASE NO: 18-31942 | |
|    Debtor § | | |
| § | CHAPTER  7 | |
| _____ § | | |
| HONG KONG DEVELOPMENT § | | |
| CORPORATION § | | |
|    Plaintiff § | | |
| § | | |
| VS. § | ADVERSARY NO. 18-3194 | |
| § | | |
| DUNG ANH PHAN § | | |
|    Defendant § | | |

## MEMORANDUM OPINION
### Resolving ECF No. 1

    Before this Court is Hong Kong Development Corporation's ("*Hong Kong Development* or *Plaintiff*") "Complaint Objecting to Debtor's Discharge Pursuant to §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5) of the United States Bankruptcy Code" ("*Complaint*") filed against Dung Anh Phan ("*Debtor* or *Defendant*").[1]  The Court conducted a one day trial on August 13, 2019.  After considering the pleadings on file, arguments of counsel, evidence in the record, credibility of the witnesses, and applicable law, this Court finds that Hong Kong Development did not meet its burden in proving a violation of § 727(a) by a preponderance of the evidence, and therefore Debtor should be granted a discharge pursuant to 11 U.S.C. § 727.

### I.    FINDINGS OF FACT

    This Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and Fed. R. Bankr. P. 9014.  Any finding of fact more properly considered a conclusion of law, or any conclusion of law more

---

[1] ECF No. 1.

properly considered a finding of fact should be so considered.

### a. Background History

On February 8, 2016, Hong Kong Development obtained a final default judgment against Debtor in Cause No. 2015-33103, *Hong Kong Development Corporation, Inc. v. Dung Anh Phan d/b/a Pho Dung and Thuy Duong Company*, in the 281st Judicial District Court of Harris County, Texas.[2] On April 17, 2018, Debtor filed a Chapter 7 voluntary petition for relief.[3] Debtor's petition listed Hong Kong Development as an unsecured creditor with a claim in the amount of $199,353.00.[4] Hong Kong Development filed its Complaint against Debtor on July 16, 2018, objecting to Debtor's discharge pursuant to §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5).[5] On September 27, 2018, Debtor filed an answer to the Complaint.[6]

### b. Factual Stipulations of the Parties

On May 29, 2019, and in accordance with this Court's Joint Pretrial Order,[7] the parties filed the following list of stipulated facts:

1. Debtor owned Pho Dung Noodle Restaurant ("*Pho Dung*") and had a lease for Pho Dung at Hong Kong City Mall at 11205 Bellaire Blvd, Houston, TX 77072.

2. The term of Debtor's lease for 11205 Bellaire Blvd, Houston, TX 77072 was to end July 1, 2015.

3. Debtor made his last payment for the premises at 11205 Bellaire Blvd, Houston, TX 77072 on April 3, 2014.

4. Debtor vacated the premises at 11205 Bellaire Blvd, Houston, TX 77072 in September 2014.

---

[2] Pl.'s Ex. 5.
[3] Bankr. ECF No. 1. Citations to the docket styled Hong Kong Development Corporation v. Dung Anh Phan, 18-3194 (the "Adversary Proceeding"), shall take the form "ECF No. —," while citations to the bankruptcy case, 18-31942 (the "Bankruptcy Case"), shall take the form "Bankr. ECF No. —."
[4] Bankr. ECF No. 1.
[5] ECF No. 1.
[6] ECF No. 9.
[7] ECF No. 27.

5. Hong Kong Development filed suit against Debtor for rents and other lease charges for the premises at 11205 Bellaire Blvd, Houston, TX 77072 on June 9, 2015 in Cause No. 2015-33103, *Hong Kong Development Corporation, Inc. v. Dung Anh Phan d/b/a Pho Dung and Thuy Duong Company d/b/a Pho Dung,* in the 281st Judicial District Court of Harris County, Texas (the "State Court Lawsuit").

6. Debtor was served with process in the State Court Lawsuit on June 23, 2015.

7. Hong Kong Development obtained a Final Default Judgment in the State Court Lawsuit on February 8, 2016.

8. Debtor signed a lease for Pho Dung Restaurant at 13211 Bellaire Blvd., Houston, TX 77083 on October 30, 2014, with a commencement date of November 1, 2014.

9. Debtor's lease for Pho Dung Restaurant at 13211 Bellaire Blvd, Houston, TX 77083 did not require any payments of rent until July 1, 2015.

10. Hanh Nguyen signed a lease for the premises at 13211 Bellaire Blvd., Houston, TX 77083 dated effective August 1, 2015.

11. A Certificate of Ownership dated August 11, 2015, identifies "Hanh TH Nguyen" as the owner of "Pho Dung 8."

12. The Debtor's Son signed a bill of sale for the premises at 13211 Bellaire Blvd, Houston, TX 77083.

13. A Certificate of Ownership dated January 18, 2018, filed in the Harris County Assumed Name Records identifies "Duy Anh Phan" at "909 Dove Run Trail, College Station, TX 77845" as the owner of "Pho Dung #8."

14. The Debtor's son, Duy Anh Phan ("*Son*"), signed a lease for the premises at 13211 Bellaire Blvd., Houston, TX 77083 dated effective February 1, 2018.

15. Hong Kong Development sent Debtor a request for production in connection with his Rule 2004 Examination asking for "[a]ll leases for the premises located at 13211 Bellaire Blvd, Houston, TX 77083."

16. Debtor responded to Hong Kong Development's request by stating "Debtor does not have a copy of the lease agreement. The lease agreement was executed between the previous owner, Hanh Nguyen and Landlord."

17. Debtor received a deposit of $12,302.50 into his bank account on November 29, 2017.

18. A cash withdrawal of $5,000.00 was made from Debtor's bank account on November 30, 2017.

19. A cash withdrawal of $3,000.00 was made from Debtor's bank account on December 14, 2017.

20. Debtor's monthly mortgage payment is $1,891.00 per month per Schedule I of the Debtor's original petition for bankruptcy.

21. Debtor is not in default on his mortgage.

22. Per Schedule I of his original petition for bankruptcy, Debtor and his spouse, Tuyet Dung Thi Nguyen's ("*Spouse*"), total income was $1,701.00 per month in Schedule I of his original petition for bankruptcy.

23. Per Schedule J of his original petition for bankruptcy, Debtor and Spouse's expenses, including their mortgage, are $2,561.00 per month.

24. Per Schedule I of Debtor's amended schedules of income, Debtor and Spouse's total income was $2,601.00.

25. Per Debtor's original petition for bankruptcy, Debtor and Spouse had no expenses for insurance.

26. A monthly debit of $300.00 is paid out of Debtor and Spouse's bank account to Voya Financial per the bank statements of such account.

27. An additional monthly debit of $55.00 is paid out of Debtor and Spouse's bank account to Voya Financial per the bank statements of such account.

28. A monthly debit of $50.00 is paid out of Debtor and Spouse's bank account to Accordia Life Insurance per the bank statements of such account.

29. A monthly debit of $42.38 is paid out of Debtor and Spouse's bank account to Molina Health Insurance per the bank statements of such account.

30. Debtor lives at 13327 Rustic Garden Dr., Houston, TX 77083.

## II. CONCLUSIONS OF LAW

a. **Jurisdiction, Venue, and this Court's Constitutional Authority to Enter a Final Order.**

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its

jurisdiction in accordance with Southern District of Texas General Order 2012-6.[8] Plaintiff's claims are core matters under § 157(b)(2)(J).[9] Regarding non-core matters, parties may consent to this Court's entry of appropriate orders and judgments.[10] Here, while Plaintiff filed its notice of consent on November 19, 2018,[11] Defendant failed to file its notice of consent or non-consent to this Court's authority to enter final orders on all non-core matters. Even if Defendant did not consent to this Court's constitutional authority to enter final orders, because all of Plaintiff's claims are core matters expressly brought under the Code,[12] the Supreme Court's holding in *Stern v. Marshall* is not applicable, and this Court holds constitutional authority to enter a final order and judgment with respect to the core matters at bar.[13] Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Here, venue is proper because the Court presided over the underlying Bankruptcy Case.[14]

### b. Generally – Discharge Under 11 U.S.C. § 727

Because the Bankruptcy Code requires a discharge unless a statutory exception applies, it is axiomatic that the denial of a debtor's discharge is a harsh remedy.[15] The exceptions set forth in § 727(a) are precisely drawn so as to encompass only those debtors who have not been honest and forthcoming about their affairs.[16] Hence, the denial of a debtor's discharge is reserved for the most egregious misconduct by the debtor.[17] In order to accomplish this limited

---

[8] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[9] *See* 28 U.S.C. § 157(b)(2)(J).
[10] *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).
[11] ECF No. 16.
[12] *See* 28 U.S.C. § 157(b)(2)(J).
[13] *See Stern*, 564 U.S. at 480.
[14] *See* Bankr. ECF No. 1.
[15] *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009); *In re Harwood*, 404 B.R. 366, 383 (Bankr. E.D. Tex. 2009).
[16] *In re Harwood*, 404 B.R. at 383.
[17] *Id.*; *Buckeye Retirement Properties v. Tauber* (*In re Tauber*), 349 B.R. 540, 545 (Bankr. N.D. Ind.2006) ["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].

purpose, the exceptions are construed strictly against the creditor and liberally in favor of granting debtors a fresh start.[18] Here, Plaintiff bears the burden of proving by a preponderance of the evidence that Defendant is not entitled to a discharge under § 727.[19] Speculation and surmise about the existence of Defendant's misconduct is insufficient.[20]

Plaintiff objects to Defendant's discharge under three sub-sections of § 727(a). First, Plaintiff alleges Defendant fraudulently concealed an interest in Pho Dung restaurant at 13211 Bellaire Blvd., Houston, TX 77083 in violation of § 727(a)(2)(A).[21] Second, pursuant to § 727(a)(4)(A), Plaintiff alleges Defendant made numerous false statements under oath.[22] Lastly, Plaintiff objects to Defendant's discharge on the grounds that Defendant failed to satisfactorily explain a deficiency of assets in withdrawals of cash "which could have been used to help satisfy [Defendant's] debts" pursuant to § 727(a)(5).[23] Establishing a single omission or misrepresentation under the elements of just one sub-section of § 727(a) is sufficient to deny Defendant's discharge.[24]

   c. **Plaintiff's Objection to Debtor's Discharge Under 11 U.S.C. § 727(a)(2)(A)**

The specific purpose of § 727(a)(2)(A) is to deny a discharge to those debtors who—intending to defraud—transfer property which would have become property of the bankrupt estate.[25] To prevail on a § 727(a)(2)(A) claim, Plaintiff must establish by a preponderance of the evidence four elements: (1) a transfer or concealment of property; (2) belonging to the debtor;

---

[18] *In re Duncan*, 562 F.3d at 695; *In re Harwood*, 404 B.R. at 383.
[19] *Tow v. Henley* (*In re Henley*), 480 B.R. 708, 766 (Bankr. S.D. Tex. 2012).
[20] *In re Mandel*, No. 10-40219, 2017 WL 1207503, at *20 (Bankr. E.D. Tex. Mar. 31, 2017).
[21] ECF No. 1.
[22] *Id.*
[23] *Id.*
[24] *In re Henley*, 480 B.R. at 766.
[25] *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989).

(3) within one year of filing of the petition; and (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[26]

**(1) Whether There Was a Transfer or Concealment of Property Belonging to Debtor**

Under the first and second elements of § 727(a)(2)(A), Plaintiff must establish that there was a transfer of property belonging to Defendant.[27] On October 30, 2014, Defendant signed a commercial lease for a property located at 13211 Bellaire Blvd. from Duc Nguyen Apt. Inc. ("*Duc Nguyen*") for Pho Dung, with a commencement date of November 1, 2014.[28] Shortly thereafter, according to the record and witness testimony, Defendant was evicted by Duc Nguyen for failure to make the contractual lease payments.[29]

After Defendant's eviction, Hahn Nguyen, who this Court determines to be an acquaintance of Defendant, agreed to take ownership of Pho Dung and hire Defendant as an employee.[30] Effective August 1, 2015, Hanh Nguyen signed a lease at 13211 Bellaire Blvd. and became the owner of Pho Dung.[31] This Court does not find any conveyance of property or title from Defendant to Hahn Nguyen. At trial, Defendant's uncontroverted testimony was that he did not sell Pho Dung to Hahn Nguyen.[32] Defendant's Son's uncontroverted testimony at trial was that he had no knowledge as to how Hahn Nguyen came to own Pho Dung.[33] Hahn Nguyen, after signing her lease at 13211 Bellaire Blvd., made no payments towards Defendant's past due rent or any liability of Defendant.[34] Plaintiff failed to produce any evidence, documentary or

---

[26] *In re Pratt*, 411 F.3d 561, 565 (5th Cir. 2005); *In re Duncan*, 562 F.3d at 695.
[27] *See In re Duncan*, 562 F.3d at 695; Black's Law Dictionary (11th ed. 2019) (defining "transfer" as "a conveyance of property or title from one person to another.").
[28] ECF No. 27.
[29] Min. Entry (08/13/2019); Pl.'s Ex. 11.
[30] Min. Entry (08/13/2019)*;* Pl.'s Exs. 11, 13.
[31] ECF No. 27.
[32] Min. Entry (08/13/2019).
[33] *Id.*
[34] Pl.'s Ex. 13.

otherwise, tracing a transfer of property between Defendant and Hahn Nguyen beyond a mere speculation. This Court cannot deny Defendant's discharge based on mere allegations made by Plaintiff with evidence that it does not have. Hahn Nguyen's decision to sign a lease with Duc Nguyen at 13211 Bellaire Blvd. and take ownership of Pho Dung after Defendant was evicted does not constitute a voluntary transfer. Accordingly, this Court finds no transfer of property under § 727(a)(2)(A).

Next, Plaintiff alleges that Defendant had fraudulently concealed an interest in Pho Dung after Defendant's Son purchased Pho Dung from Hahn Nguyen.[35] Transfer of title to property while retaining benefits of ownership constitutes concealment within the purview of § 727(a)(2).[36] If Plaintiff shows that Defendant secretly retained an interest in property through the year prior to bankruptcy, even though the transfer of title may have occurred prior, such concealment is within the reach of § 727(a)(2)(A).[37]

Here, Plaintiff's burden is proving that Pho Dung belonged to Defendant at the time of the transfer.[38] On January 31, 2018, Hahn Nguyen sold Pho Dung to Defendant's Son in exchange for $9,000 as evidenced by a Bill of Sale from Hahn Nguyen to Defendant's Son.[39] However, Defendant cannot transfer what he does not have. Since this Court finds that no transfer of Pho Dung occurred in 2015, Hahn Nguyen's sale of Pho Dung to Defendant's Son did not involve Defendant. Accordingly, Plaintiff failed to prove that there was a transfer of property belonging to Defendant under the second element of § 727(a)(2)(A).

---

[35] ECF No. 1.
[36] *Cullen Center Bank & Trust v. Lightfoot* (*In re Lightfoot*), 152 B.R. 141, 146 (S.D. Tex. 1993).
[37] *In re Olivier*, 819 F.2d 550, 554–55 (5th Cir. 1987).
[38] *See In re Duncan*, 562 F.3d at 698.
[39] Def.'s Ex. 20.

Additionally, this Court rejects the argument made by Plaintiff that the change in ownership of Pho Dung in 2018 was a "sham sale" connected to the Defendant.[40] Evidence and credible witness testimony has demonstrated that Defendant's Son was and still is, for all relevant time periods, the true owner of Pho Dung. At the time of the transfer, Defendant's Son was named in the Bill of Sale with Hahn Nguyen as the buyer of Pho Dung.[41] Defendant's Son was solely listed as the owner of Pho Dung on both the City of Houston's health and tax permits.[42] At trial, Defendant's Son's uncontroverted testimony was that he is solely liable for the debts of Pho Dung.[43] He testified that he handled orders with vendors,[44] had knowledge of the profits on the tax returns,[45] and made the decisions as to whether profits are distributed or put back into the business to pay the bills.[46] This Court also finds it persuasive that Defendant's Son moved to Houston around December 2018 to continue to operate Pho Dung.[47]

The issue to be determined here is who owned and retained an interest in Pho Dung during all relevant time periods within the purview of § 727(a)(2)(A). It is not necessary to demonstrate the highest level of business acumen, but simply necessary to show an ownership interest. This Court has not been presented with any evidence by Plaintiff rebutting the testimony of Defendant and Defendant's Son regarding the ownership of Pho Dung. Therefore, this Court determines that the property in question, Pho Dung, was not transferred by Defendant, and any such transfer was between third parties. Additionally, this Court does not find that Defendant retained any continued ownership interest in Pho Dung.

---

[40] ECF No. 31.
[41] Def.'s Ex. 20.
[42] Def.'s Exs. 20–23.
[43] Min. Entry (08/13/2019).
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*

**(2) Whether Debtor Transferred Property Within One Year of Filing the Petition**

Assuming arguendo, that Plaintiff was able to prove that Defendant transferred property belonging to Defendant, Plaintiff must still prove that Defendant did so within one year of filing for bankruptcy.[48] The evidence at trial demonstrated conclusively that Defendant signed a lease for Pho Dung in late October 2014 and was evicted shortly thereafter for failure to make all of the contractual lease payments. Then in August of 2015, Hahn Nguyen "took over" Pho Dung and employed the Debtor. Finally, on January 31, 2018, the uncontroverted witness testimony demonstrated that Pho Dung was sold by Hahn Nguyen to Defendant's Son in exchange for $9,000. Here, Defendant filed a voluntary petition on April 17, 2018. If Defendant caused any "transfer of property" to occur it was in August of 2015, well outside the parameters of 11 U.S.C. 727(a)(2)(A). Therefore, Defendant did not transfer property within one year of filing the petition.

**(3) Whether Debtor Transferred Property With the Intent to Hinder, Delay, or Defraud a Creditor or Officer of the Estate.**

In order the meet the fourth prong of § 727(a)(2)(A), Plaintiff must also prove Defendant transferred property with the intent to hinder, delay or defraud creditors or an officer of the estate.[49] As a preliminary matter, Plaintiff neither plead, nor put on any evidence at trial that Defendant acted with any intent to hinder, delay, or defraud any creditor or an officer of the estate beyond argument and speculation.[50] At trial, Defendant did not admit to transferring property of any kind with fraudulent intent. No testimony was elicited by Plaintiff that demonstrated direct evidence of actual intent to defraud. This, of course, is no surprise. Most

---

[48] *See In re Duncan*, 562 F.3d at 698.
[49] *See Id.*
[50] *See In re Mandel*, 2017 WL 1207503, at *20 ("[S]peculation and surmise about the existence of such misconduct are insufficient. Probative evidence must be presented.").

Defendants would never offer to volunteer gratuitous testimony in support of any fraudulent activity. Instead, this Court must review the evidence, judge the creditability of the witnesses and make an independent determination as to whether Defendant actually intended to defraud Plaintiff by taking into account certain factors that may support the finding of actual intent to defraud.

The Fifth Circuit has adopted six factors that may be used to show actual intent to defraud under § 727(a)(2)(A): (1) the lack or inadequacy of consideration, (2) the family, friendship or close associate relationship between the parties, (3) the retention of possession, benefit or use of the property in question, (4) the financial condition of the party sought to be charged both before and after the transaction in question, (5) the existence or cumulative effect of the pattern of series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors, and (6) the general chronology of events and transactions under inquiry.[51] All of the factors of fraud do not have to be present to support a finding of fraudulent intent, however, evidence of one factor may not be dispositive.[52] Constructive intent is inadequate; proof of actual intent—which can be inferred from Debtor's actions and circumstantial evidence—is necessary.[53] Courts may deduce fraudulent intent from all the facts and circumstances of a case.[54] A presumption of actual fraudulent intent arises if the debtor transfers property gratuitously or to a relative.[55] If the plaintiff can demonstrate these facts, the burden shifts to the debtor to prove that he lacked fraudulent intent.[56]

---

[51] *In re Chastant,* 873 F.2d at 91.
[52] *In re Rao*, 526 B.R. 623, 627 (Bankr. E.D. La. 2015); *see In re Duncan*, 562 F.3d at 699.
[53] *In re Duncan*, 562 F.3d at 698.
[54] *In re Chastant,* 873 F.2d at 91.
[55] *In re Duncan*, 562 F.3d at 698.
[56] *Id.* at 698.

First, the transfer of Pho Dung between Hahn Nguyen and Defendant's Son was in consideration of $9,000.[57] Defendant's Son testified at trial to the exchange of Pho Dung for an initial payment of $5,000, with monthly payments to pay off the remainder.[58] Second, the transfer of Pho Dung did not involve an exchange between family members. It was established at trial that Hahn Nguyen was not related to Defendant or Defendant's Son. The fact that the transfer was between Hahn Nguyen and Defendant's Son is immaterial.

Since this Court finds that Defendant did not maintain an interest in the business, there was no family, friendship or close associate relationship between the transacting parties of Pho Dung. Defendant was not involved in the Bill of Sale. Consequently, the burden never shifted to Defendant to prove that he lacked fraudulent intent because this Court does not find any transfer of property belonging to Defendant. Third, as discussed above, Defendant did not retain possession, benefit, or use of Pho Dung beyond that of an employee. Mere employment is not the equivalent of ownership. Accordingly, there is no evidence of an intent to defraud under the third factor. Turning to the fourth, fifth, and sixth factors, this Court finds credible the testimony of Defendant and Defendant's Son. Each testified that the reason for the Defendant's Son's purchase of Pho Dung was to provide a steady job for Defendant so he could support his own family. Defendant's Son's uncontroverted testimony was that he purchased Pho Dung to provide jobs for both of his parents.

Because the exceptions to discharge are construed strictly against the creditor and liberally in favor of granting debtors a fresh start, this Court finds that Plaintiff failed to meet its burden of proof in showing that Defendant has transferred property with the intent to hinder, delay, or defraud creditors.

---

[57] Def.'s Ex. 20.
[58] Min. Entry (08/13/2019).

**d. Plaintiff's Objection to Debtor's Discharge Under 11 U.S.C. § 727(a)(4)(A)**

Section 727(a)(4)(A) conditions a debtor's discharge on his truthfulness: "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."[59] In order to prove Defendant's alleged sworn deception, Plaintiff must prove by a preponderance of the evidence that (1) a statement made by Defendant was made under oath; (2) the statement was false; (3) Defendant knew the statement was false; (4) Defendant made the statement with fraudulent intent to deceive; and (5) Defendant's statement materially related to the bankruptcy case.[60] False oaths sufficient to justify the denial of discharge include a false statement or omission in the debtor's schedules or a false statement by the debtor at the examination during the course of the proceedings.[61] The subject matter of a false oath is material and sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.[62] The disclosure of material financial information only when asked directly or confronted with the truth justifies a presumption of fraud.[63]

Plaintiff claims Defendant made numerous false statements under oath, including false statements regarding his income and expenses in his bankruptcy schedules, false statements in response to requests for production sent by Plaintiff, and false statements in response to questions at the Defendant's Rule 2004 examination.[64] Plaintiff further points to statements made by the Defendant, including Dung Anh Phan's Response to Production Under

---

[59] 11 U.S.C. § 727(a)(4)(A).
[60] *In re Duncan*, 562 F.3d at 695.
[61] *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).
[62] *Id.*
[63] *In re Henley*, 480 B.R. at 766.
[64] ECF No. 31.

Examination,[65] Defendant's original and amended petitions,[66] and Defendant's Schedule I.[67] While Plaintiff has identified statements made by Defendant under oath, Plaintiff has produced no direct evidence or elicited any testimony showing that Defendant's statements were made with fraudulent intent to deceive.

Proving that a debtor's actions were taken knowingly and with fraudulent intent is not a simple manner, for it is rare that one will willingly provide direct evidence of fraudulent intent.[68] Absent a showing of actual intent to deceive, fraudulent intent may be proved by a showing of reckless indifference for the truth, which can often be found through an examination of a course of conduct.[69] However, courts in the Fifth Circuit have stated that they will not bar discharge by just counting mistakes and deriving fraudulent intent.[70]

In *In re Guenther*, the court noted that it may be impossible to produce schedules that contain no mistaken information, and that bankruptcy papers with mistakes are per se not enough to bar a debtor's discharge.[71] Rather, the appropriate response is to offer amended information in a prompt fashion, and not to wait to amend the errors only after the insistence of one of their creditors.[72] In the *Guenther* case, the court found that the debtor acted with a reckless disregard for the truth when the debtor delayed amending their schedules for over four months, in addition to withholding information and thwarting discovery at every turn.[73] Here, this Court finds that Defendant made amendments and provided information within a reasonable time period. On

---

[65] Pl.'s Ex. 10.
[66] Pl.'s Exs. 1, 3.
[67] Pl.'s Ex. 2.
[68] *In re Franco*, 600 B.R. 355, 359 (Bankr. S.D. Tex. 2019).
[69] *Id.*
[70] *In re Harding*, No. 14-30282-HDH7, 2015 WL 222482, at *5 (Bankr. N.D. Tex. Jan. 14, 2015) ("Individual bankruptcy cases often involve people who are under stress and without all their records, and thus who make mistakes in their forms. However, mistakes by themselves do not equal fraudulent intent meriting denial of discharge.").
[71] *In re Hughes*, 353 B.R. 486, 505 (Bankr. N.D. Tex. 2006).
[72] *In re Guenther*, 333 B.R. 759, 767 (Bankr. N.D. Tex.2005).
[73] *Id.*

April 17, 2018, Defendant filed his original Schedule I with his voluntary petition.[74] On June 4, 2018, Defendant filed his amended Schedule I.[75] Unlike the debtor in *Guenther*, amendments to Schedule I were made by the Defendant in under two months. Cases in which the Fifth Circuit has found such delays in making amendments to contribute to a finding of the requisite intent to deceive have been longer than in the present case.[76]

Another court in the Fifth Circuit found the *Guenther* case persuasive in deciding a § 727(a)(4) objection. In *In re Hughes*, the court held that if the debtor makes an honest effort to clear up honestly made mistakes, such efforts should not be ignored in favor of focusing on the first, ugly errors.[77] The debtor in that case provided inconsistent testimony regarding how much income he received and where the income came from.[78] The debtor was "seemingly [unable] to answer questions regarding various matters set forth in his Schedules, including but not limited to matters regarding personal and household expenditures."[79] When confronted with discrepancies, the debtor made an attempt to answer when he had the knowledge to do so, or provided information on how to obtain the answer by referring to his wife or his accountant.[80] Such conduct was not enough to deny the debtor's discharge under § 727(a)(4)(A).[81]

Here, Defendant made an honest effort to clear up any honestly made mistakes. Like the debtor in *Hughes*, Defendant was not always precise regarding how much income he received. However, this Court finds credible Defendant's testimony at trial that the additional income

---

[74] Bankr. ECF 1.
[75] Bankr. ECF 10.
[76] *See Matter of Beaubouef*, 966 F.2d at 178 (holding that debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules six months later, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive.).
[77] *In re Hughes*, 353 B.R. at 505.
[78] *Id.* at 494–96.
[79] *Id.* at 505.
[80] *Id.*
[81] *See generally id.*

reflected in the Amended Schedule I comes from Duy Anh Phan, Defendant's Son, on a monthly basis.[82] That monthly amount, as the Court heard, may vary from month to month. Plaintiff also alleged that Defendant made false statements in his Schedule J by failing to include approximately $405.00 in insurance expenses found in a bank statement produced by Plaintiff.[83] However, Defendant explained both in his deposition and at trial that any discrepancy in insurance payments was a result of a policy belonging to his spouse and son, and they held knowledge of those payments. When confronted with discrepancies at trial, Defendant made an attempt to answer each question when he had the knowledge to do so. Similar to the debtor in *Hughes*, when Defendant did not have the knowledge to answer the question, he deferred to his spouse or son, who also testified at the trial and corroborated Defendants' testimony.

Importantly, Plaintiff has the burden to prove by a preponderance of the evidence that Defendant made false statements with fraudulent intent or acted with reckless indifference for the truth.[84] Plaintiff has failed to present any probative evidence that Defendant made any false statements with fraudulent intent that is contrary to the testimony at trial.[85] Although Defendant's lack of knowledge about certain matters may raise a few eyebrows, Defendant amended his schedules to the satisfaction of this Court. Plaintiff did not put forth any rebuttal witnesses contradicting Defendant's testimony.

Accordingly, because Plaintiff failed to produce evidence showing Defendant knowingly and fraudulently made a false statement or account in connection with the case, and the denial of a discharge is to be strictly construed against Plaintiff and liberally in favor of Defendant, Plaintiff's objection to discharge under § 727(a)(4)(A) should be denied.

---

[82] Min. Entry (08/13/2019).
[83] Pl.'s Ex. 15.
[84] *See In re Duncan*, 562 F.3d at 695.
[85] *See In re Mandel*, 2017 WL 1207503, at *20 ("[S]peculation and surmise about the existence of such misconduct are insufficient. Probative evidence must be presented.").

### e. Plaintiff's Objection to Debtor's Discharge Under 11 U.S.C. § 727(a)(5)

Under § 727(a)(5), a discharge may be denied if the debtor fails to explain any loss or deficiency in his assets to meet his liabilities.[86] The plaintiff bears the initial burden of adducing evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable for distribution to creditors.[87] If this is proven, the debtor then has the burden of establishing a "satisfactory" explanation for the asset reduction, eliminating speculation regarding the disposition of assets.[88] What constitutes a "satisfactory" explanation for the reduction of assets has not been definitively defined, but a lack of wisdom in the debtor's expenditures, standing alone, is not grounds for denial of a discharge.[89] The proper focus under § 727(a)(5) is on the credibility of the proffered explanation rather than the propriety of the disposition of the assets, and an explanation need not even be meritorious to be satisfactory.[90] However, the debtor's explanation does need to consist of more than a vague, indefinite, and uncorroborated hodgepodge of financial transactions.[91] A debtor cannot overcome a § 727(a)(5) objection with mere general explanations; when substantial assets have disappeared from the estate, the debtor must produce supporting documentary evidence.[92]

Plaintiff alleges that Defendant has failed to adequately explain cash withdrawals "which could have been used to satisfy [Defendant's] debts."[93] Plaintiff relies on the disposition of $12,302.50 from Defendant's bank account prior to the filing of bankruptcy to support its claim

---

[86] 11 U.S.C. § 727(a)(5).
[87] *In re Henley*, 480 B.R. at 786–87; *See Matter of Chu,* 679 F. App'x 316, 319–20 (5th Cir. 2017).
[88] *Id.*
[89] *In re Crumley*, 428 B.R. 349, 371 (Bankr. N.D. Tex. 2010); *In re Sauntry*, 390 B.R. 848, 857 (Bankr. E.D. Tex. 2008).
[90] *In re Crumley*, 428 B.R. at 371; *In re Guillet*, 398 B.R. 869, 890 (Bankr. E.D. Tex.2008).
[91] *In re Henley*, 480 B.R. at 786–87.
[92] *Id.* at 787.
[93] ECF No. 1.

of a violation under § 727(a)(5).[94] Plaintiff produced a bank statement of Defendant that shows a deposit of $12,305.50 into Defendant's bank account on November 29, 2017.[95] The bank statement also shows that Defendant made withdrawals of $5,000.00 and $3,000.00 from that same account within two weeks after the deposit was made.[96] This Court finds that the production of a bank statement by Plaintiff is sufficient to establish its initial burden, and the burden shifts to Defendant to provide a satisfactory explanation for the reduction of assets, which he does.

In *In re Reed*, the Fifth Circuit found that the debtor did not meet his burden in explaining the disposition of $19,586.83.[97] There, the debtor responded that he always carries amounts of cash, paid for household and business expenses as they arose in cash, and that he lost an unspecified amount of money gambling.[98] The Fifth Circuit held that the debtor's answer was not satisfactory under § 727(a)(5). Unlike the debtor in *Reed*, Defendant produced a check documenting the reason for a $12,305.50 deposit into the account, as well as testimony at trial explaining its disposition.

On April 18, 2016, Defendant suffered hail damage to his home.[99] On September 29, 2017, ASI Lloyd's Claim Account ("*Insurance Company*") paid Defendant and Ditech Financial LLC ("*Mortgage Company*") in the amount of $12,950 for hail loss.[100] At trial, Defendant's Spouse testified that the check from Insurance Company was paid to the Mortgage Company. Mortgage Company withdrew the amount that needed to be paid for the mortgage by Debtor that

---

[94] Pl.'s Ex. 16; *See In re Crumley*, 428 B.R. at 371 (Court found that sufficient evidence of loss occurred when plaintiff relief on significant withdrawals from debtor's accounts over time).
[95] Pl.'s Ex. 16.
[96] *Id.*
[97] *Matter of Reed,* 700 F.2d 986, 993 (5th Cir. 1983).
[98] *Id.*
[99] Def.'s Ex. 24.
[100] *Id.*

month and deposited the remainder of the funds into Defendant's bank account. That deposit is the $12,302.50 in question. Once deposited, the Defendant withdrew two sums of money to pay the roofing contractor in cash. Courts in the Fifth Circuit have held that a debtor's payment to laborers in cash is not subject to penalty under § 727(a)(5) because it is common practice.[101] Defendant's withdrawals following a deposit from the Mortgage Company is a credible explanation. Plaintiff did not put forth any additional evidence or rebuttal witnesses contradicting Defendant's testimony. Accordingly, Defendant's explanation is sufficient and Plaintiff's objection to Defendant's discharge under § 727(a)(5) is denied.

### III. CONCLUSION

Pending before this Court is Hong Kong Development's Complaint. After considering the pleadings on file, arguments of counsel, evidence in the record, credibility of the witnesses, and applicable law, this Court finds that Hong Kong Development failed to meet its burden in proving a violation of §§ 727(a)(2)(A), 727(a)(4)(A), and 727(a)(5) by Debtor. As such, Debtor should be granted a general discharge pursuant to 11 U.S.C. § 727.

A separate order consistent with this Memorandum Opinion will be issued simultaneously herewith.

SIGNED 10/10/2019.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[101] *In re Lee*, 309 B.R. 468, 480 (Bankr. W.D. Tex. 2004) (finding that debtor's payment of day laborers in cash is not uncommon without formal documentation).